CASTLE ESTATES, INC. *vs.* PARK AND PLANNING BOARD OF MEDFIELD.

Norfolk.    March 6, 1962. — May 9, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Subdivision Control.*

It was beyond the authority of a municipal planning board to subject its approval of a subdivision plan under the subdivision control law, G. L. c. 41, §§ 81K to 81GG, to the conditions that a water distribution system connected with the public water system be installed in the subdivision and that a drainage easement in land of another be obtained, where respecting such matters the regulations adopted by the board under § 81Q were too vague and general to adequately inform subdividers of the standards which they must meet.

BILL IN EQUITY filed in the Superior Court on August 15, 1960.

The suit was heard by *Dewing,* J.

*Joseph R. Santos,* (*Bernard V. Martin* with him,) for the plaintiff.

*Joseph S. Kennedy,* for the defendant.

CUTTER, J.    This is an appeal under G. L. c. 41, § 81BB (as amended through St. 1957, c. 199, § 2), by Castle Estates, Inc. (Castle), the owner of land in Medfield, from a decision of that town's planning board with respect to a subdivision plan filed by Castle. The board approved the plans "subject to three . . . conditions: 1. A suitable water distribution system [shall] be installed for domestic use and fire protection . . . connected to the public water supply system . . . and . . . subject to the approval of the . . . [w]ater and [s]ewerage [c]ommission. 2. A drainage easement must be obtained . . . on land owned . . . by [one] Hussey . . . to be recorded . . . prior to the issu-

ance of any building permits.   3.   No permit shall be issued for any dwelling until the sanitary system has been approved by the . . . [b]oard of [h]ealth.''   A judge of the Superior Court made findings and ordered that a decree be entered stating that the members of the board had acted ''within the scope of their authority as defined by the subdivision control law.''   From the final decree Castle appealed.   The facts are stated on the basis of the judge's findings.[1]

Castle's plan ''conformed with all the requirements of the [t]own [b]y-laws and necessary regulations.   The board had adopted, under the subdivision control law, certain regulations governing the development of land in Medfield. Some of these are quoted or summarized in the margin.[2]

---

[1] The evidence is not reported despite a statement to the contrary in a certificate transmitting certain exhibits without reproduction in the record. The certificate is dated long after the final decree.   See *Dodge* v. *Inspector of Bldgs. of Newburyport*, 340 Mass. 382, 386.   Cf. *Clarke* v. *Board of Appeals of Nahant*, 338 Mass. 473, 475.   The exhibits transmitted, however, are referred to in the judge's findings.   Counsel for all parties referred at the arguments to these exhibits, and they have been considered by this court.   It would have been appropriate for the judge expressly to have incorporated them by reference in his findings, thus avoiding ambiguity about whether they are properly part of the record.   See *Jenckes* v. *Building Commr. of Brookline*, 341 Mass. 162, 163.

[2] The preamble to the regulations states that ''[s]ubdivisions shall comply with the [z]oning [b]y-[l]aw and the requirements of the [w]ater and [s]ewer [b]oard.''   The ''general requirements'' of the regulations (§ 1) include a provision ''that the land shall be suitable for residential building without danger to health, that the proposed streets shall compose a convenient system with adequate street connections to insure free circulation of traffic, and that access for future street extensions shall be made, together *with such provision of street development and utilities* as in . . . [the board's] opinion will justify the subdivision'' (emphasis supplied).   The prescribed application form (§ III) binds the applicant to ''install the utilities and complete the ways as finally approved by the [b]oard'' within a stated time, and to ''install utilities in accordance with such rules of the . . . [w]ater and [s]ewer [c]ommissioners as are applicable to the installation of utilities within the limits of the ways, and to complete . . . the . . . ways in accordance with all . . . [r]egulations of the [p]lanning [b]oard in force at the date of this agreement.''   Surveys and plats (§ IV) are to include ''[l]ocation and ownership of abutting property'' and ''[a]ll natural objects and surfaces such as waterways, natural drainage courses . . . .''   A contour map may be required.   The size and location of existing and proposed water mains and sewer pipes as approved by the water and sewer commissioners are to be indicated, and also the size and location of existing and proposed surface drains as approved by the superintendent of streets.   In respect of construction for streets and roadways (§ VI) the regulations include provisions for ''[n]ecessary drainage to take care of surface and sub-surface water of the roadway and adjoining land,'' as determined by the superintendent of streets, and the installation of sewer pipes and water mains ''within the limits of ways'' in accordance with rules of the water and sewer commissioners.

"The proposed [town] water system . . . is about 3,200 feet from any approved proposed subdivision." Medfield "adopted [the subdivision control law] on October 8, 1951." Castle's plan "indicates . . . some twenty-nine lots in the proposed development, and each lot contains at least thirty thousand square feet . . . . There are some eight houses already completed on this development . . . under permits issued by the [t]own . . . . Each of these houses is supplied with domestic water . . . [from] drilled wells. The purchasers of these . . . houses . . . are now occupying most of these."

Castle contends that the first two conditions (requiring a water system connected with town water and acquisition of a drainage easement in adjacent land) imposed by the planning board upon its approval of the subdivision plan are without warrant in the subdivision control law or the town's regulations. Castle does not contend that the board could not impose the third condition concerning the board of health's approval of each dwelling's sanitary system.

1. In *Daley Constr. Co. Inc.* v. *Planning Bd. of Randolph,* 340 Mass. 149, 152–156, we discussed several of the pertinent provisions of the subdivision control law.[3] We expressly did not decide (p. 156) "whether a planning

---

[3] The following provisions of G. L. c. 41, as amended, must be considered. Section 81M (as amended through St. 1957, c. 265) reads in part: "The subdivision control law has been enacted . . . [to protect] the safety, convenience and welfare of the inhabitants of . . . towns . . . by regulating the laying out . . . of ways . . . and ensuring sanitary conditions in subdivisions and in proper cases parks and open areas. The powers of a planning board . . . shall be exercised . . . for the provision of adequate access to all of the lots . . .; for lessening congestion in . . . ways . . .; for securing safety in the case of fire, flood, . . . and . . . emergencies; for insuring compliance with the applicable zoning . . . by-laws; [and] for securing adequate provision for water, sewerage, drainage and other requirements where necessary in a subdivision . . . . It is the intent of the . . . law that any subdivision plan filed with the planning board shall receive . . . approval . . . if said plan conforms to the recommendation of the board of health *and to the reasonable rules and regulations* of the planning board pertaining to subdivisions . . ." (emphasis supplied). Section 81Q (as amended through St. 1960, c. 196; see later amendment by St. 1960, c. 417), reads in part, "After . . . hearing a planning board shall adopt, and . . . may . . . amend, reasonable . . . regulations relative to subdivision control not inconsistent with . . . any . . . provisions of a statute or of any valid . . . by-law of the . . . town. Such . . . regulations may prescribe the . . . contents . . . of plans and the procedure for the submission and approval thereof . . . and shall set forth the requirements of the board with respect to the location [and] construction . . . of the proposed ways . . . and the installation of municipal services therein, which require-

board under § 81U may require that, before lots are sold . . . arrangements be made to connect the water pipe system within a subdivision with pipes leading to a proper water supply." In the *Daley Constr. Co.* case, and in *Doliner v. Planning Bd. of Millis,* 343 Mass. 1, 6, we reviewed in detail the purposes and legislative background of essentially the present provisions of the subdivision control law (G. L. c. 41, §§ 81K to 81GG, as amended) and there is no occasion for repeating what was there said.[4] The general purposes of the law are stated in § 81M (see the *Daley Constr. Co.* case, at pp. 153–154), and it is contemplated (see *Doliner v. Planning Bd. of Millis,* at p. 6) "that the planning board shall ensure compliance of subdivision plans not only with the zoning by-law, but also with the rules and regulations which *must* be adopted under § 81Q . . . by each planning board in a community where the subdivision control law is in effect" (emphasis supplied). See *Pieper v. Planning Bd. of Southborough,* 340 Mass. 157, 163. See also the 1952 special commission report upon which much of the present statute is based, 1953

---

ments shall . . . carry out the purposes of . . . section eighty-one M. . . . Except . . . as it may require compliance with the requirements of existing zoning . . . by-laws, no . . . regulation . . . [exclusions not here pertinent] shall be inconsistent with the regulations and requirements of any other municipal board acting within its jurisdiction. . . ." Then follows other language not directly pertinent. Section 81U (as amended through St. 1960, c. 266, § 2) reads in part, "When a definitive plan of a subdivision is submitted to the planning board . . . a copy . . . shall also be filed with the board of health . . . . Such health board . . . in the event of disapproval shall make specific findings as to which, if any, of the lots . . . cannot be used for building sites without injury to the public health . . . . After . . . the report of said health board . . . the planning board shall approve, or, *if such plan does not comply with the subdivision control law or the rules and regulations of the planning board or the recommendations of the health board or officer,* shall modify and approve or shall disapprove such plan . . . . In the event of disapproval, the planning board shall state in detail wherein the plan does not conform to the rules and regulations of the planning board or to the recommendations of the health board . . . . *If the report of the board of health . . . shall so require, the approval by the planning board shall be on condition that no building . . . shall be . . . placed upon the areas designated without consent by such board of health . . . . Before approval of a plan, a planning board shall require provision for the construction of ways and the installation of municipal services in accordance with the . . . regulations of said board . . . ."* (emphasis supplied). Later provisions of § 81U are not directly pertinent.

[4] See discussion of recent amendments, Ann. Survey, Mass. Law, 1956, § 1.3; 1957, § 11.3; 1958, § 14.10; 1959, §12.11. See also *Gordon v. Robinson Homes, Inc.* 342 Mass. 529, 531–532; *Doliner v. Town Clerk of Millis,* 343 Mass. 10; *Ward & Johnson, Inc.* v. *Planning Bd. of Whitman,* 343 Mass. 466.

House Doc. No. 2249, at pp. 55–56, where it is said that the revised § 81Q is designed to ensure "that a prospective subdivider will know in advance in every case what will be required of him in the way of street construction and public utilities." In the *Pieper* case, we pointed out (p. 163) that the adoption of regulations under § 81Q is "mandatory" and that the legislative history there quoted "gives no indication that planning boards were to have freedom to disapprove plans which comply with applicable standards merely because the board feels general public considerations make such action desirable."[5] See, however, McCarty, Planning Boards and Sub-Division Control Again, 40 Mass. L. Q. (No. 4) 23, 25. In the light of the statutory provisions we think that any power of the Medfield planning board, to impose upon Castle the water supply and drainage conditions, must be found in the statutory provisions already quoted or in its duly adopted regulations existing when the subdivision plan was filed.

2. We find in the statute (considered apart from any regulations adopted by the planning board) no basis for the conditions imposed by the Medfield board. Although § 81M, as amended (see footnote 3, *supra*), includes as a purpose of the law "securing adequate provision for water, sewerage, drainage and other requirements where necessary in a subdivision," § 81M definitely states that a plan shall be approved if it "conforms to the recommendation of the board of health and to the reasonable . . . regulations of the planning board." The record discloses no recommendation of the board of health that the plan be disapproved or approved only conditionally. Section 81Q, as amended, merely defines what regulations may be adopted by a planning board and by what procedure. Section 81U, as amended, in terms emphasizes (see language italicized, footnote 3, *supra*) that the plan is to be approved unless it

---

[5] In 1953 House Doc. No. 2249, at p. 54, the 1952 recess commission said of § 81M, "The only purposes [of the law] recognized are to provide suitable ways for access furnished with appropriate municipal utilities, and to secure sanitary conditions." See also discussion at pp. 57–58, of somewhat broader language in the then proposed § 81U than that finally adopted by the Legislature in the italicized language quoted in footnote 3, *supra*.

"does not comply with" the statute or the planning board's regulations and that "the installation of municipal services" is to be "in accordance with the . . . regulations."

3. The Medfield planning board has adopted regulations. It has covered many procedural matters and some substantive matters. We find, however, in the relevant regulations (footnote 2, *supra*) no explicit provisions permitting the board to require that subdivision plans in any area or areas shall contain provision (a) for connection of the water systems in the subdivision with town water or (b) for obtaining, in appropriate cases, drainage easements to take off surplus water. The planning board, in any event, cannot impose conditions of this type upon its approval of subdivisions, where it has not included (or incorporated by reference to other regulatory provisions) in its regulations provisions defining (a) what ways and utilities are or may be required in connection with subdivision plans; (b) what standards are to be applied by the board in exercising any powers given to it by the regulations to withhold approval and to impose conditions; and (c) what those powers are. The subdivision control law attaches such importance to planning board regulations as to indicate to us that they should be comprehensive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them and what standards and procedures will be applied to them. Without such regulations, the purposes of the law may easily be frustrated.

The Medfield regulations deal with the matters here in issue in terms (see footnote 2, *supra*) too vague and general to inform owners about the standards which they must meet. In the absence of adequate regulations, it is not necessary for us to pass upon the extent of the board's power to adopt regulations under § 81Q, or upon the validity of any particular type of regulations. It is sufficient to say that no present regulation of the board permits it to do what it has tried to do.

4. The final decree is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.                                    *So ordered.*