ROBERT B. SPARKS & others vs. PLANNING BOARD OF
WESTBOROUGH & others.

Worcester.  October 16, 1973. — December 31, 1974.

Present: ROSE, KEVILLE, & GOODMAN, JJ.

*Subdivision Control.  Words,* "Dead-end street."

Streets laid out in the shape of a "T" in a subdivision plan were two
  dead-end streets rather than one and thus did not violate the
  length turn-around and lot-access requirements for dead-end
  streets imposed by the zoning board of appeals of a town.  [747-
  749]

BILL IN EQUITY filed in the Superior Court on October
28, 1971.

The suit was heard by *Lappin,* J.

*Richard J. Sarapas* for the plaintiffs.

*Robert J. Gallagher,* Town Counsel, for the Planning
Board of Westborough.

*Eugene L. Tougas* for Edward I. Garry.

KEVILLE, J.   This bill in equity was brought pursuant
to G. L. c. 41, § 81BB (as appearing in St. 1957, c. 199,
§ 2) to have annulled the decision of the planning board
of Westborough (board) approving a definitive plan sub-
mitted under the Subdivision Control Law (G. L. c. 41,
§§ 81K-81GG) by the defendant Edward I. Garry, who
apparently held an option to purchase the land within
the proposed subdivision from its owner, the defendant
Dorothy L. Stevenson.   The plaintiffs, who are abutters
to the proposed subdivision at its southeasterly boundary,
appeal from a final decree entered by a judge of the
Superior Court upholding the decision of the board
without modification.

The shape and size of the proposed subdivision, its
constituent numbered lots, the proposed streets therein

and their relation to Bowman Street, a nearby public way, are shown in the following sketch plan.[1]

Figure 1

[1] The plan was prepared at the expense of the Appeals Court from the subdivision plan, an exhibit in the case. No plan appeared in the record or in the plaintiffs' brief. We direct the plaintiffs' attention to Rule 1:15 (5) of the Appeals Court, 1 Mass. App. Ct. 891 (1972): "In cases where geographical facts are of importance unless appropriate plans are reproduced in the record, an outline plan (based upon exhibits in evidence) shall be included in the appellant's brief. This outline plan should be suitable for reproduction on one page of the printed law reports." Under Rule 1:15 (6) a brief not complying with the foregoing rule "may be struck from the files by the court." See Tutela v. Hines, 1 Mass. App. Ct. 860 (1973).

The plaintiffs' principal contention is that the layout of ways within the subdivision is in violation of the rules and regulations adopted by the board pursuant to G. L. c. 41, § 81Q (as amended through St. 1969, c. 884, § 3), and particularly § IV-B-6 of the board's rules and regulations: "Dead End Streets: (a) shall not exceed 600 feet in length, and (b) shall be provided with a turn-around having a property line diameter of at least 120 feet, and (c) shall not provide access to more than 12 lots." They take the position that Sandra Pond Road and Thomas Rice Drive, each of which is slightly less than 600 feet long and provides access to fewer than twelve lots, together constitute a single dead-end street more than 600 feet long and providing access to thirteen lots, in violation of clauses (a) and (c) of § IV-B-6.

The plaintiffs concede that these requirements could have been waived by the board under appropriate circumstances (G. L. c. 41, § 81R, as amended through St. 1955, c. 411, § 1), but they call attention to § VI-B-1 of the board's rules and regulations, under which the board may waive compliance with its rules and regulations "only when, in the judgment of the Board, such action is in the public interest and not inconsistent with the Subdivision Control Law." It is clear that both the board and the judge viewed Sandra Pond Road as a thoroughfare[2] distinct from Thomas Rice Drive and thus found it unnecessary to treat either the provisions of § IV-B-6 or § VI-B-1 of the board's rules and regulations.

With exceptions not here material, G. L. c. 41, § 81M (as amended through St. 1969, c. 884, § 2), requires approval of any plan which "conforms . . . to the reasonable rules and regulations of the planning board pertaining to subdivisions of land." *Baker* v. *Planning Bd. of Framingham,* 353 Mass. 141, 144 (1967). Such

---

[2] "[A] way or place for passage: as . . . a street open at both ends." Webster's Seventh New Collegiate Dictionary, p. 919 (1972).

"[A] street . . . affording an unobstructed exit at each end into another street." Black's Law Dictionary, p. 1651 (rev. 4th ed. 1968).

rules or regulations may be enforced only to the extent that they are "comprehensive, reasonably definite, and carefully drafted, *so that owners may know in advance what is or may be required of them*" (emphasis supplied). *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329, 334 (1962). See *Lyman* v. *Planning Bd. of Winchester,* 352 Mass. 209, 212 (1967). Compare *McDavitt* v. *Planning Bd. of Winchester, post,* 806 (1974). We are of the opinion that this test would not have been met and the board could not properly have disapproved the plan by reason of § IV-B-6 if the board and the court had applied to the configuration of ways shown in Figure 1 the interpretation of § IV-B-6 urged by the plaintiffs.

Neither the board's rules and regulations nor Massachusetts cases have defined "dead-end street." It obviously includes a single, continuous stretch of road open at one end and closed at the other, such as that depicted in *LaCroix* v. *Commonwealth,* 348 Mass. 652, 653, 654 (1965). See also *Francesconi* v. *Planning Bd. of Wakefield,* 345 Mass. 390 (1963); *Tassinari* v. *Massachusetts Turnpike Authy.* 347 Mass. 222, 223-224 (1964); *McDavitt* v. *Planning Bd. of Winchester, supra.* If Thomas Rice Drive were expunged from the plan, Sandra Pond Road would plainly be a "dead-end street" subject to the length and lot-access limitations imposed by § IV-B-6. The plaintiffs, as we have indicated earlier, would carry this a step further by treating any combination of such ways as a single dead-end street, where, as here, there is but one means of access to them from a public way, in this case Bowman Street, which was found by the judge to be a highway in the town. Little imagination is required to visualize the all but innumerable combinations of ways which could be encompassed within the plaintiffs' definition of a dead-end street.

Our attention has not been directed to, nor have we found, support for the plaintiffs' assertion that the configuration of ways shown in Figure 1 must be treated as a single dead-end street. See *Wickham* v. *Newfane,* 190

Misc. (N. Y.) 880 (1947). We find no conflict between the board's interpretation of its regulations in this respect and the requirements of G. L. c. 41, § 81M, among which is the board's obligation to exercise its powers with due regard for coördinating the ways in a subdivision with each other and with the public ways.

The plaintiffs in effect contend that § IV-B-6 requires a second means of access to the subdivision from Bowman Street or from some other way. Implicit in their contention is the proposition that § IV-B-6 regulates not merely the character of dead-end streets within a subdivision but regulates as well the number of access routes between it and the system of public ways. While the board could have adopted a regulation of the latter type (see *Mc-Davitt* v. *Planning Bd. of Winchester, supra,* we do not think that § IV-B-6 can be properly utilized to accomplish that objective in this case. That the board had this consideration in mind becomes apparent when § IV-B-6 is compared with the requirement of § IV-B-2 of its rules and regulations that "[s]ubdivisions of *50 or more* lots will normally be required to have more than one access to an existing primary street" (emphasis supplied). No such minimum access requirement exists where, as here, far fewer than fifty lots are involved.

The only other contention which has been argued by the plaintiffs within the meaning of Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972) (see *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 [1958]), is that "the plan which was submitted and approved failed to show all the lots into which the land was to be subdivided in that it failed to show the lot to be retained by the landowner." The lot to which reference is made is shown at the lower left in Figure 1, where it is identified as "Excluded land of Stevenson." The short answer to this contention is that the approved plan, which was among the exhibits certified to us, does in fact show the lot in question.

*Decree affirmed.*