MAC-RICH REALTY CONSTRUCTION, INC. *vs.* PLANNING BOARD OF SOUTHBOROUGH.

Worcester.    December 8, 1975. — February 13, 1976.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Subdivision Control. Equity Pleading and Practice,* Subdivision control appeal.

Where it appeared in the record of an appeal under G. L. c. 41, § 81BB by a developer from a decision of a town's planning board that the judge had heard evidence on all significant issues, the developer was not denied a hearing de novo. [81]

Rules and regulations of a town's planning board were sufficiently clear to give a developer reasonable notice of what was or might be required of it. [82-83]

It was within the authority of a town's planning board to refuse to waive compliance with certain of its requirements, and a developer failed to show that the board had abused its discretion by such refusal. [83-86]

BILL IN EQUITY filed in the Superior Court on May 12, 1971.

The suit was heard by *Meagher*, J.

The case was submitted on briefs.

*Eugene L. Tougas* for Mac-Rich Realty Construction, Inc.

*William F. Brewin & Jerry E. Benezra* for the Planning Board of Southborough.

HALE, C.J.    This case involves an attempt by Mac-Rich Realty Construction, Inc. (developer), to obtain approval under the Subdivision Control Law (G. L. c. 41, §§ 81K-81GG) to subdivide a tract of land adjacent to Woodbury Road in Southborough.

Following the presentation and discussion of a preliminary plan (see G. L. c. 41, § 81S) in early 1969, the developer submitted a definitive plan which was disapproved by the planning board of Southborough (planning board) by letter dated October 8, 1969. In its letter the planning board stated ten reasons for disapproval.[1] Having made some of the changes suggested by the 1969 disapproval, the developer resubmitted the plan to the planning board on March 3, 1971. Following a public hearing, the planning board disapproved the revised plan on April 27, 1971. This time the board listed eighteen reasons for its decision.[2]

The developer then appealed to the Superior Court pursuant to G. L. c. 41, § 81BB, from that decision. After examining exhibits, hearing testimony and taking a view, a Superior Court judge made findings of fact (later adopted as a report of material facts) and issued an order for a decree. The developer has appealed from a final decree, which affirmed the April 27, 1971, action of the planning board. The evidence is reported. If the record discloses

---

[1] The planning board determined, among other things, that certain areas should not be used for building lots, that one of the proposed ways (Darlene Drive) was in violation of planning board regulations prohibiting dead-end streets in excess of 500 feet in length, that sidewalks should be included on one side of all streets in the subdivision, that certain easements should be granted for water mains, that certain drains should be constructed, that a larger right of way should be provided at the point of entry to the subdivision (Heather Lane), and that two lots should be reserved for recreational purposes.

[2] The board found that the location of the access road (Heather Lane) was unsafe and inadequate and determined, among other things, that Darlene Drive was in violation of planning board regulations pertaining to dead-end streets, that sidewalks should be included on certain streets within the subdivision, that various easements should be created for water mains and emergency access, that certain drains should be constructed and certain curbing and berms should be installed, that a particular lot lacked the minimum frontage, and that the plan failed to provide for street numbers.

4 Mass. App. Ct. 79                                  81

Mac-Rich Realty Constr. Inc. *v.* Planning Board of Southborough.

that any substantial reason given by the board for disapproval of the plan was proper, the court's decree will be affirmed. However, in order to avoid prolonged litigation concerning the subdivision of this land, we discuss each of the reasons stated by the planning board to which the developer still objects.

1. The developer contends that it was denied a hearing de novo which is required by G. L. c. 41, § 81BB. Section 81BB provides in part that "[a]ny person ... aggrieved ... by any decision of a planning board concerning a plan of a subdivision ... may appeal to the superior court sitting in equity for the county in which the land concerned is situated ... The court shall hear all pertinent evidence and determine the facts, and upon the facts so determined, shall annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require."

In hearing an appeal under section 81BB the court should conduct a hearing de novo, find facts, and determine the validity of the planning board's decision. *Rettig v. Planning Bd. of Rowley*, 332 Mass. 476, 479 (1955). The Superior Court judge made findings of fact and upheld the validity of the board's decision. The developer maintains that it was prevented from presenting all pertinent evidence and thus was denied a hearing de novo.

A statement made by the trial judge that he would not consider every reason for the planning board's decision appears to support the developer's contention. However, reading the transcript as a whole, it becomes apparent that it was merely the judge's intention not to get bogged down in minor details such as the failure of the plan to present street numbers on each lot. Since the transcript discloses that all significant issues were heard by the court, the developer's contention that it was denied a hearing de novo is without merit.[3]

---

[3] It should be noted that the developer neither objected nor excepted to the court's seeming unwillingness to consider a point by point treatment of each of the eighteen reasons given by the board for its decision.

2. The developer's argument that the 1954 rules and regulations of the planning board rather than the 1960 rules and regulations should be applied in this case because a copy certified by the town clerk was not recorded pursuant to G. L. c. 41, § 81Q, finds no support in the record. Uncertified copies of both the 1954 and the 1960 regulations were stipulated in evidence at the trial, subject only to their relevancy and materiality. This point was not raised at trial, and the trial judge made no finding as to which set of regulations applied. We do not consider it here. *Selectmen of Ayer* v. *Planning Bd. of Ayer,* 3 Mass. App. Ct. 545, 548 (1975). For purposes of this opinion we shall consider the 1960 rules and regulations as those applicable to the case. In any event, the outcome would not have been materially affected had the 1954 set been applied.

3. The developer contends that some of the reasons upon which the planning board relied for disapproval of the plan are invalid since they are based on regulations which do not meet the requirements of definiteness set forth in *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329, 334 (1962).

The Subdivision Control Law requires each planning board to adopt reasonable rules and regulations. G. L. c. 41, § 81Q. However, such rules and regulations may be enforced only to the extent that they are comprehensive and reasonably definite so that owners may know in advance what may be required of them and what standards and procedures will be applied to them. *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield, supra.*

In its decision the planning board cited inadequate widths of pavement and rights of way as reasons for disapproval.[4] For example, the board determined that a forty-four foot right of way and twenty-eight feet of pavement

---

[4] In *Castle Estates* the planning board approved a subdivision plan subject to conditions. In the instant case the board disapproved the plan for reasons stated. Since the developer may make changes and resubmit the plan, the reasons for disapproval are not unlike conditions of approval. The standard of *Castle Estates* applies in both situations.

width would be necessary on Heather Lane near Woodbury Road to insure safe vehicular travel. The developer contends that no planning board regulation gives notice of this requirement. This contention is without merit. Section IV,A,2, of the planning board regulations states that "[t]he minimum width of street rights-of-way shall be forty (40) feet. Greater width shall be required by the Board when deemed necessary for present and future vehicular travel." Section V,A,3, requires that "[a]ll roadway shall be at least 24 feet...." These provisions give adequate notice that the board may, in its discretion, require greater widths.

The developer also contends that the board's attempt to require bituminous concrete berms is invalid because the board's regulations do not specify that concrete berms shall be used. Section V,A,3,e, makes reference to berms but does not specify the material of which they are to be constructed. The intent appears to have been to reserve that question for a case by case determination of what might be appropriate in the circumstances of a particular development. We think it sufficient that the regulation informs every developer that a berm of some type may be required. As the *Castle Estates* case makes clear, it is enough if a regulation gives ample notice of "what is or *may be required*" (emphasis supplied). 344 Mass. at 334. We think § V,A,3,e, does that. Contrast *Sparks* v. *Planning Bd. of Westborough*, 2 Mass. App. Ct. 745, 747-748 (1974); *Chira* v. *Planning Bd. of Tisbury*, 3 Mass. App. Ct. 433, 438-439 (1975).

4. The final decree of the Superior Court will not be affirmed unless it was within the authority of the board to refuse approval of the plan for the reasons it stated. The burden of proof is on the appellant (developer) to show that the board exceeded its authority and acted improperly in disapproving the subdivision plan. See *Selectmen of Ayer* v. *Planning Bd. of Ayer*, 3 Mass. App. Ct. at 548.[5]

---

[5] The developer asserts that "the submission of a preliminary plan and its discussion and processing by the Planning Board are not sup-

In reaching its decision the planning board must look to the factors set forth in the purpose section of the Subdivision Control Law, G. L. c. 41, § 81M.[6] But the board may consider those factors only as they relate to matters within the proposed subdivision. An otherwise proper subdivision plan may not be disapproved on the grounds that the subdivision will adversely affect traffic patterns or municipal services in the community as a whole. See *Daley Constr. Co. Inc.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 155 (1959). A plan may not be disapproved "merely because the board feels general public considerations make such action desirable." *Pieper* v. *Planning Board of Southborough*, 340 Mass. 157, 163-164 (1959). Instead, G. L. c. 41, § 81M,

---

posed to be ignored." No showing has been made that the planning board ignored the preliminary plan. Furthermore, since the developer has no right to appeal from any action taken on a preliminary plan (*Livoli* v. *Planning Bd. of Marlborough,* 347 Mass. 330, 335 [1964]), we are concerned only with the board's disapproval of the definitive plan.

[6] "The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns in which it is, or may hereafter be, put in effect by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions and in proper cases parks and open areas. The powers of a planning board and of a board of appeal under the subdivision control law shall be exercised with due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways; for reducing danger to life and limb in the operation of motor vehicles; for securing safety in the case of fire, flood, panic and other emergencies; for insuring compliance with the applicable zoning ordinances or by-laws; for securing adequate provision for water, sewerage, drainage, underground utility services, fire, police, and other similar municipal equipment, and street lighting and other requirements where necessary in a subdivision; and for coordinating the ways in a subdivision with each other and with the public ways in the city or town in which it is located and with the ways in neighboring subdivisions. It is the intent of the subdivision control law that any subdivision plan filed with the planning board shall receive the approval of such board if said plan conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board pertaining to subdivisions of land; provided, however, that such board may, when appropriate, waive, as provided for in section eighty-one R, such portions of the rules and regulations as is deemed advisable."

requires approval of any subdivision plan which conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board.[7]

The planning board cited the excessive length of Darlene Drive, a dead-end street within the subdivision, as a reason for the disapproval of the plan. Section IV,A,4,a, of the planning board regulations provides that "[d]ead-end streets shall not be longer than five hundred (500) feet unless, *in the opinion of the Board,* public necessity requires a greater length" (emphasis supplied). A member of the board testified that the 1971 revised plan submitted with a dead-end street in excess of 500 feet was treated as an application for a waiver of the 500 foot requirement. The developer asserts that the board should have waived that requirement.[8]

General Laws c. 41, § 81R, allows the planning board to waive compliance with its rules "where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law." See *Caruso* v. *Planning Board of Revere,* 354 Mass. 569, 572 (1968). Both § 81R and its own regulations give the board discretion to refuse to waive strict compliance with its regulations.[9] See *Building Inspector of Burlington* v. *Board of*

---

[7] The recommendations of the board of health are not at issue here.

[8] The developer's argument that the planning board may regulate the width but not the length of the street is without merit. See *Francesconi* v. *Planning Bd. of Wakefield,* 345 Mass. 390, 393 (1963).

[9] On direct examination the developer attempted to elicit testimony from the chairman of the planning board as to the reason for the refusal to waive the 500 foot requirement. On cross-examination the developer asked another member of the planning board how the public interest would be served by enforcing the 500 foot requirement. The trial judge sustained objections to both questions. The developer contends that this testimony should have been admitted in order to show that waivers had been granted in other similar situations.

Although the developer excepted to the judge's exclusion of the testimony, no offer of proof was made. On direct examination an exception to the exclusion of a question will ordinarily not be sustained in the absence of an offer of proof. *Commonwealth* v. *Baker,* 348 Mass. 60, 63 (1964). In the absence of an offer of proof, there is no showing that it was prejudicial to refuse to admit the excluded evidence. *Ford* v. *Worcester,* 339 Mass. 657, 658 (1959). Even on cross-examination,

*Appeals of Burlington,* 356 Mass. 734 (1969); *McDavitt* v. *Planning Bd. of Winchester,* 2 Mass. App. Ct. 806, 807 (1974). However, it has not been demonstrated that the planning board abused its discretion by refusing to waive compliance with the regulations.

The board's decision required that sidewalks be constructed in the subdivision. Section V,C,1, of the regulations states that "[s]idewalks ... shall be constructed on both sides of the street ... when, in the opinion of the Board, such sidewalks are necessary." The board came to the conclusion that some sidewalks are necessary, and there is nothing in the record to show that the board abused its discretion in making that determination. It is clear that the developer knew in advance that sidewalks might be required. See *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. at 334; *McDavitt* v. *Planning Bd. of Winchester,* 2 Mass. App. Ct. at 807. Furthermore, the record discloses that sidewalks had been required in other subdivisions.

5. We have considered all arguments arising out of the reasons for disapproval given by the board which are still pressed by the developer. See *Caruso* v. *Planning Bd. of Revere,* 354 Mass. at 572. The trial judge found "[t]hat the petitioner has not sustained the burden of proof showing that the plan submitted has complied with the requirements of the General Laws and the ... [regulations of the planning board] pertaining to subdivision plans." By so finding and affirming the action of the board, the court implicitly ruled that the board did not exceed its authority

---

where an offer of proof is not ordinarily required, there still must be some indication that the excluded testimony would have been helpful. *Commonwealth* v. *Baker,* 348 Mass. at 63. Where the purpose of the question is not apparent and the prejudice to the cross-examiner is not clear, the record must disclose the cross-examiner's reason for seeking an answer to the excluded question. *Breault* v. *Ford Motor Co.* 364 Mass. 352, 357-358 (1973). The developer should have indicated to the trial judge the line of inquiry it proposed to make. There is no error where the question itself does not disclose how the answer might be to the benefit of the party asking the question. *Donahue* v. *Kenney,* 330 Mass. 9, 13 (1953).

within the meaning of G. L. c. 41, § 81BB.[10] On appeal the findings of the trial judge will not be reversed unless plainly wrong. See *United Reis Homes, Inc.* v. *Planning Bd. of Natick,* 359 Mass. 621, 624 (1971); *Malaguti* v. *Planning Bd. of Wellesley,* 3 Mass. App. Ct. 797 (1975). The findings here are not lacking in evidential support and cannot be said to be plainly wrong. Compare *Caruso* v. *Planning Bd. of Revere,* 354 Mass. at 571.

*Decree affirmed.*

---

[10] From the entry of the final decree in the planning board's favor one can infer a finding that the board did not exceed its authority. Cf. *Berry* v. *Nardozzi,* 362 Mass. 145, 150 (1972).

