LOUIS M. CANTER & others[1] *vs.* PLANNING BOARD OF WESTBOROUGH.

Worcéster.    May 14, 1979. — June 25, 1979.

Present: HALE, C.J., ARMSTRONG, & KASS, JJ.

*Practice, Civil,* Summary judgment, Judgment on the pleadings. *Subdivision Control. Practice, Civil,* Subdivision control appeal.

Where the judge in a civil action took into account a plaintiff's admissions and a stipulation of the parties, as well as the pleadings, in entering a judgment on the defendant's motion under Mass.R.Civ. P. 12(c), the motion was converted to one for summary judgment under Mass.R.Civ.P. 56. [808]

Where the record in an appeal under the provisions of G. L. c. 41, § 81BB, disclosed the existence of a number of unresolved questions of fact, the judge erred in granting summary judgment and the case was remanded for a hearing de novo to determine whether a town's planning board had exceeded its authority in disapproving the plaintiffs' subdivision plan. [808-809]

Whether the location of a proposed street in a subdivision plan would encourage through traffic on an existing residential street rather than discourage it, as required by a planning board regulation, presented questions of fact to be determined by a judge after a hearing de novo. [810]

A planning board could properly base its disapproval of a subdivision plan on the ground that the intersection of a proposed residential street with an existing primary street would be closer to an existing

---

[1] Irving W. West and Catherine W. Guyette.

intersection than the distance allowed by a planning board regulation where the provisions in the regulations defining "primary street," "secondary street," and "residential street" were sufficient to inform the subdividers in advance what was required of them and what standards would be applied to them. [810-811]

Where a subdivision plan was not made a part of the record on an appeal under the provisions of G. L. c. 41, § 81BB, from a planning board's disapproval of the plan, questions concerning whether the line of sight for a proposed residential street met the requirements of a board regulation and whether a curb radius was shown on the plan in accordance with another regulation presented questions of fact for determination by a judge after a hearing de novo. [811]

A planning board could properly base its disapproval of a subdivision plan on the ground that the plan did not provide for the pedestrian ways "normally" called for by a board regulation where the word "normally" in the regulation merely reserved to the board the right to waive strict compliance in a given situation. [811]

A planning board could not base its disapproval of a subdivision plan on the ground that the plan did not comply with a regulation which provided that "[a]reas for open space, parks and/or playgrounds will normally be required to be set aside in accordance with the proposals and intents of the Master Plan" where the town had neither accepted nor adopted a master plan. [812]

A planning board could properly base its disapproval of a subdivision plan on the ground that the subdividers failed to comply with a regulation requiring the installation of certain improvements, including sidewalks, unless such requirements were waived in writing by the board where the board did not abuse its discretion in refusing a waiver requested by the subdivider. [812]

Whether subdividers had complied with a planning board's regulation concerning the installation of adequate means of water disposal in a proposed subdivision was a question of fact to be determined by a judge after hearing de novo. [813]

BILL IN EQUITY filed in the Superior Court on March 1, 1973.

After remand by this court, the suit was heard by *Meagher*, J., on a motion for judgment on the pleadings.

The case was submitted on briefs.

*Eugene L. Tougas & Robert A. Keating* for the plaintiffs.

*Robert J. Gallagher* for the defendant.

HALE, C.J. The plaintiffs are once again before us on an appeal from a Superior Court judgment affirming the disapproval of their subdivision plan by the planning board of Westborough (board). In *Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct. 306 (1976) (*Canter I*), we reversed an earlier disapproval of the same plan. The board on that occasion disapproved the plan on the ground that the development would create dangerous traffic conditions on several public ways adjacent to the subdivision and that access to the subdivision in the event of an emergency would be inadequate due to the narrowness and anticipated congestion of such adjacent ways. Finding nothing in the board's rules and regulations directed to those aspects of the plan, we ordered that judgment enter annulling the board's action and directing the board to hold a public hearing on the plan and thereafter to take final action on it. We also provided that the Superior Court in its discretion could retain jurisdiction over the case. The judgment after rescript entered in the Superior Court provided for such retention.

We are now faced with the round of events which followed our decision in *Canter I.* After a hearing, the board again disapproved the plan, this time for a number of reasons which we shall discuss separately in this opinion. The plaintiffs thereupon filed a motion for further relief following rescript, to institute a new appeal under the provisions of G. L. c. 41, § 81BB, requesting annulment of the board's decision on the ground that the board exceeded its authority. A "statement in rebuttal" of the board's decision, appended to the motion, set forth numerous assertions of fact and law. The board thereupon filed a request for admissions from Louis M. Canter, one of the plaintiffs, that certain regulations of the board, which were fully set forth, were in effect and applicable to the plan, and also called for the admission of numerous matters concerning the definitive plan and acts of the board surrounding their disapproval of it. All but two of the matters were admitted. The board moved for judgment on

the pleadings under Mass.R.Civ.P. 12(c), 365 Mass. 756 (1974). After a hearing, the judge allowed the motion against all of the plaintiffs, judgment entered, and the plaintiffs appealed.

1. Although substantial portions of both the board's and the plaintiffs' briefs are concerned with whether the judge treated in a procedurally proper fashion the board's motion for judgment on the pleadings, it is unnecessary for us to enter this morass in view of the fact that neither a motion under rule 12(c) nor one converted to a motion for summary judgment under rule 56 can be granted properly where there is a genuine issue of material fact. *Greenberg* v. *General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973). *Franklin Natl. Bank* v. *Krakow*, 295 F. Supp. 910, 915 (D.D.C. 1969). Moore's Federal Practice § 56.09 (2d ed. 1976). As Canter's admissions[2] and a stipulation of the parties were "presented to and not excluded by" the judge, it appears that the motion was converted to one for summary judgment under rule 56, and it appears from the record that the parties had no objection to proceeding under that rule. That the judgment as entered was mislabeled, however, does not affect the result we reach.

2. From the record before us, we conclude that this case is not an appropriate one for summary disposition under either rule 12(c) or rule 56. As will be shown in our discussion of the reasons for disapproval advanced by the board (part 3, *infra*), the record discloses the existence of a number of unresolved questions of fact. Accordingly,

---

[2] The plaintiffs argue that the judge erred in entering judgment against all of them, where only the plaintiff Canter admitted the truth of certain matters requested of him by the board. In their reply brief, the plaintiffs suggest that plaintiffs West and Guyette might not have admitted those matters. However, in their original petition, the plaintiffs indicated that Canter was their authorized agent. In any event, there is no indication from the record that this argument was presented to the judge at the hearing in the Superior Court, and we do not now consider it.

the case must be remanded for proceedings in the Superior Court pursuant to G. L. c. 41, § 81BB, at which the judge will conduct a hearing de novo and, on the facts found by him as to each of the board's reasons for disapproval, determine whether the board exceeded its authority in disapproving the plan.[3] *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476, 479 (1955). *Strand* v. *Planning Bd. of Sudbury,* 5 Mass. App. Ct. 18, 21 (1977). *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. 171, 173 (1977).

In deciding to remand this case, we have considered the argument, advanced by the board, that "[i]f the record discloses that any substantial reason given by the board for disapproval of the plan was proper, the court's decree will be affirmed."*Mac-Rich Realty Constr., Inc.,* v. *Planning Bd. of Southborough,* 4 Mass. App. Ct. 79, 80-81 (1976). *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. at 179. As our discussion in part 3, *infra,* will more fully illustrate, the board gave several reasons for disapproval which we deem to have been proper. We are of the opinion, however, that application of the *Mac-Rich-Fairbairn* standard stated above is inappropriate at this point in these proceedings. In both *Mac-Rich* and *Fairbairn,* the lower court had heard testimony and filed findings of fact sufficient for us to review the validity of each reason given for disapproving the plan. Without such findings we lack a sufficient foundation for ruling on the propriety of a number of the board's reasons. The plaintiffs are entitled to know which of the stated deficiencies have merit. *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough, supra* at 81. To further the resolution of all the issues presented we have decided everything open on the record and leave the rest for the Superior Court.

[3] The court, of course, will not be required to make findings and rulings with respect to those of the board's reasons which are disposed of in this opinion.

3. We will now discuss each reason given by the board for disapproving the plaintiffs' subdivision plan.

(a) The board's first reason was based on its conclusion that the location of a proposed street (Sun Valley Drive) in the subdivision would encourage through traffic on an existing residential street (Robin Road), rather than discourage it, as required by § IV B (d)c of the board's regulations.[4] Whether traffic would be encouraged and, if so, whether such traffic would constitute "through" traffic are determinations of fact which must be left to the Superior Court.

(b) The board based its second reason for disapproval on a finding that the intersection of a proposed residential street (Meadowbrook Road) with an existing primary street (Milk Street) would be closer to an existing intersection (Park Street, a secondary street, with Milk Street) than the distance allowed by § IV B (2). Canter admitted this deficiency. The plaintiffs question the validity of the regulations in that the terms "primary street," "secondary street," and "residential street" are at best vaguely defined in the regulations and, in any event, depend for their meaning upon references to the town's master plan, a document which the parties agree has neither been accepted nor adopted by the town. Having examined the regulations, and § IIA(2)(a), (b) & (c) in particular, we rule that the provisions defining "primary street," "secondary street," and "residential street" are "comprehensive, reasonably definite, and carefully drafted" and sufficient to inform the plaintiffs "in advance what is or may be required of them and what standards and procedures will be applied to them" (*Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 [1962]; *Canter I*, 4 Mass. App. Ct. at 309) and that the regulation is valid notwithstanding the lack of a master plan, reference to

---

[4] In this part the sections referred to are in the regulations of the planning board as they appear in the request for admissions of fact and in the certificate of disapproval.

which appears to be for graphically demonstrating the several types of streets. The board's second reason is, therefore, a valid basis for disapproving the plan.

(c) The board gave as its third reason its finding that the line of sight for a proposed residential street (Sun Valley Drive) is less than the two hundred foot minimum required by § IV B (4). Canter denied in his response to the board's request for admissions that the line of sight is less than two hundred feet. A clear question of fact was thus presented to the judge. As with other such questions, its resolution requires, at a minimum, examination of the plan which has not been made a part of the record on appeal.

(d) For the same reasons as just discussed with regard to the third reason for disapproval, a determination by the Superior Court is needed as to the board's fourth reason, concerning whether a curb radius is shown on the plan in accordance with § IV B (5).

(e) As its fifth reason for disapproval, the board found that the plan does not provide for the pedestrian ways "normally called for by § IV E. Canter admitted that the plan does not provide for or show such ways. The main thrust of the plaintiffs' argument is that, by its use of the word "normally," the regulation impermissibly leaves open to speculation whether pedestrian ways will be required in all instances, so that the regulation is invalid. We disagree with the plaintiffs' reading of § IV E. The use of the word "normally" in that section reserves to the board the case by case determination of what might be appropriate for a particular subdivision and permits it, upon application by the developer, to waive strict compliance in a given situation. The regulation is sufficient under the test provided in *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. at 334. We therefore rule that the regulation is valid and that the fifth reason constitutes a proper basis for disapproval of the plaintiffs' plan.

(f) The board based its sixth reason on § IV F, which provides in part that "[a]reas for open space, parks and/ or playgrounds will normally be required to be set aside in accordance with the proposals and intents of the Master Plan . . . ." With regard to this particular provision, the lack of a master plan is fatal to the validity of the regulation. Without a master plan § IV F is unclear as to what may be required of the plaintiffs and as to what standard will be applied to them. Compare *Sparks* v. *Planning Bd. of Westborough*, 2 Mass. App. Ct. 745, 748 (1974); *Chira* v. *Planning Bd. of Tisbury*, 3 Mass. App. Ct. 433, 438 (1975).

(g) As to the seventh reason, § V of the regulations requires a subdivider to install all the improvements itemized therein unless such requirements are waived in writing by the board. Canter admitted that there had been no waiver. Such improvements include sidewalks on both sides of certain proposed streets (§ V B 1 [a]), and a ten-inch gravel base under the sidewalks (§ V B [b]). Given Canter's admissions that the plan shows only one sidewalk along certain streets and a six inch gravel base, the plan was properly disapproved as to those requirements.

The plaintiffs argue that as they requested the board to waive some of the sidewalk requirements, the refusal of a waiver should not take the form of disapproval of the plan. General Laws c. 41, § 81R, gives a planning board discretion to require or waive strict compliance with its regulations. *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 213-214 (1967). *Building Inspector of Burlington* v. *Board of Appeals of Burlington*, 356 Mass. 734 (1969). There is nothing in the record to suggest that the plaintiffs had any reason to expect a waiver, *McDavitt* v. *Planning Bd. of Winchester*, 2 Mass. App. Ct. 806, 807 (1974), or that the board abused its discretion in determining that the strict requirements of § V would be enforced. *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. at 86.

Finally, in its statement of reasons designated 7(c)(1-9), the board determined that the plaintiffs had not complied with § V B 5 (a), which requires that "[s]torm drains, culverts, ditches, and related installations, including catch basins, gutters and manholes shall be installed to provide adequate disposal of surface water including control of erosion, flooding and standing water from or in the subdivision and adjacent lands." Whether the measures shown on the plan are "adequate" for the purposes of § V B 5 (a), raises an obvious question of fact which cannot be answered without a hearing and reference to the subdivision plan.

The judgment is reversed, and the case is remanded to the Superior Court for proceedings consistent with the views expressed herein.

*So ordered.*