Rup, J.
The plaintiff, C.B. Blair Development Corporation, filed this action, pursuant to G.L.c. 41, §8IBB, appealing a decision of the Town of Holden Planning Board (the “Board”) denying his plan of a subdivision of land (the plan).
After trial, based upon the exhibits and the credible evidence, I find and rule as follows.
SUBSIDIARY FINDINGS OF FACT
On July 28, 2000, the plaintiff submitted to the Board a plan for a subdivision known as Alden Woods II. The plan covered land in the Town of Holden situated on Wachusetts Street and Chapel Street.
On January 23, 2001, after several public hearings on the matter, the Board voted to deny the plaintiffs plan. The Board cited three reasons for its denial: (1) Blair Drive, a curved road running through the subdivision, failed to provide safe traveling conditions at a speed of thirty miles-per-hour; (2) the plaintiff failed to adhere to the Board’s regulation which requires that streets provide safe vehicular travel; and (3) letters from the director of the Town of Holden Department of Public Works written to the Board recommending that the Board deny the subdivision plan because the conditions of Blair Drive failed to provide safe traveling conditions at a speed of thirty miles per hour.
ULTIMATE FINDINGS OF FACT AND RULINGS OF LAW
“(T]he duties of the [ ] Court in hearing and deciding appeals under [G.L.c 41,] §8IBB are to conduct a hearing de novo, find the relevant facts, and, confining its review to the reasons stated by the planning board for its disapproval of the subdivision plain, determine the validity of the board’s decision.” Fairbairn v. Planning Bd. of Barnstable, 5 Mass.App.Ct. 171, 173 (1977) (internal citations omitted).
Here, the plaintiff argues that the Board provided inadequate reasons for denial and that the applicable regulatory standard was vague. The plaintiff has the burden of proving that the Board has exceeded its authority in disapproving the plan. Mac-Rich. Realty Constr., Inc. v. Planning Bd. of Southborough, 4 Mass.App.Ct. 79, 83 (1976).
A. Inadequate Stated Reasons for Denial
The plaintiff argues that the Board exceeded its authority because the Board’s stated reasons for the denial do not satisfy the statutory requirements of G.L.c. 41, §81U and the Board’s reasons relate to matters not covered by any specific rule or regulation. General Laws c. 41, §81U requires that when a planning board disapproves of a subdivision plan following a hearing, the board must “state in detail wherein the plan does not conform to the rules and regulations of the planning board . . .”
Here, only one of tire three stated reasons for the Board’s denial referenced a specific regulation. In reasoning that the plaintiff failed to adhere to Board regulations for safe vehicular travel, the Board cited Subdivision Control Regulations for the Town of Holden (“Regulations”), §V.A.l.a, which provides that “all streets in the subdivision shall be designated so that, in the opinion of the Board, they will provide safe vehicular travel.” Nevertheless, itis clear that the other two reasons for the Board’s denial address concerns about safe travel on Blair Drive and also rely on this particular regulation. Thus, the Board’s stated reasons comply with the requirements of G.L.c. 41, §81U.
B. Vague Standard
The plaintiff also argues that the standard by which the Board designates a street as safe exceed the Board’s statutory authority because the standard is vague and does not place a developer on notice as to what is required.
A Board’s regulations must be comprehensive, reasonable, definite or carefully drafted, so that developer may know in advance what is or may be required of them. Castle Estates, Inc. v. Park and Planning Bd. of Medfield, 344 Mass. 329 (1962). However, “within [this] rubric of definiteness there is room for flexibility to allow local boards to tailor decisions to the specific facts and circumstances.” North Landers Corp. v. Planning Bd. of Falmouth, 382 Mass. 432, 443 (1981). Here, the Board’s regulations require that it designate a *355 street which provides safe vehicular travel. While not further defined, other regulations, such as the center line radius requirement and the grade requirement, provide some guidance as to the design of a road which permits safe traffic.
Regulations, §V-A.l.g provides: “All curved streets shall be designated to permit safe vehicular travel.” That regulation sets forth specific additional requirements, including that the minimum center line radius, or curvature, of curved minor streets, such as Blair Drive, be 150 feet, Regulations, §V-A.l.g:(l), and that the maximum grade on minor streets, like Blair Drive, be 10.0%. Regulations, §V-A.3.a. As proposed, Blair Drive’s center line radius is 155 feet and its maximum gradéis 1.93%.
The regulations do not include any comprehensive or specific regulations regarding speed limits, design speeds in excess of legal speed limits or requirements of Massachusetts State Highway Department approval. The parties do not appear to dispute that the presumptive speed limit for vehicular traffic on Blair Road would be thirty miles per hour, and that further action by the Massachusetts Highway Department would be needed to alter the presumptive speed limit. Towns cannot set or post lower speed limits for public roadways: only the state can do so after completion of the subdivision and an appropriate traffic study.
During trial, the plaintiff presented testimony of James Kalloch (“Kalloch”), a registered professional civil engineer who has extensive experience in subdivision design, including the design of subdivision roads. Kalloch performed work on the Alden Woods II project and prepared the preliminary plan for the project. I credit his testimony that, as designed, the street grade and curvature of Blair Street conform to Holden regulations. However, Kalloch admitted that he designed Blair Road for vehicular travel at 23.5 miles per hour and that he recommended that the plaintiff post “advisory” signs indicating a speed limit of 20 to 25 miles per hour. He acknowledged that the police could not lawfully enforce such an “advisory” speed limit. Where, as here, a regulation requires that streets be designed for safe vehicular travel, a developer should be expected to know in advance that such a regulation requires that the road be safe when traveled at the maximum speed limit. Significantly, the plaintiff engaged the services of a civil engineer who recognized the need for safe vehicular travel in his design. Nevertheless, that engineer designed a road which required a lower rate of speed for safe travel.
I found more persuasive the testimony of Alan Berg (“Berg”), a registered civil engineer with experience working for the Worcester Department of Public Works and as assistant director and, later, director of the Town of Holden’s Department of Public Works. In conjunction with the Board’s review of the proposal, and in his capacity as director of the Department of Public Works, Berg reviewed the plaintiffs plan and reported his findings to the Board. Berg determined that the grade and curvature of Blair Road conformed to Holden regulations. However, he also determined that the grade and curvature, when combined geometrically, did not provide a safe road design. I credit Berg’s determination that Blair Road, as designed, would not permit a vehicle operator operating at thirty miles per hour to safely see around its curve in order to determine the necessity of a stop and to safely effect the stop.
The credible evidence persuades me that, as designed, Blair Road may not provide safe vehicular travel as required by the Board’s regulations. Consequently, the Board did not exceed its authority by disapproving the plaintiffs plan for the Alden Woods II subdivision.
ORDER FOR JUDGMENT
For the foregoing reasons, it is hereby ORDERED that the decision of the Town of Holden Planning Board be affirmed.