NORTH LANDERS CORPORATION *vs.* PLANNING BOARD
OF FALMOUTH.

Barnstable.   November 21, 1979. — February 19, 1980.

Present: ARMSTRONG, ROSE, & KASS, JJ.

*Subdivision Control*, Access ways, Regulations.   *Words*, "Adequate."

Regulations of a municipal planning board requiring that a subdivision
 have "adequate" access from a public way and prescribing procedures
 to be followed if the board considers "inadequate" the public way
 from which a subdivision has access, without defining the two con-
 cepts, were impermissibly vague, and the board exceeded its authority
 in disapproving a subdivision plan in reliance on such regulations.
 [194-197]

CIVIL ACTION commenced in the Superior Court on
May 4, 1977.

The case was heard by *Collari*, J., a District Court judge
sitting under statutory authority.

*Stephen T. Keefe, Jr.,* for the plaintiff.

*Edward W. Farrell,* Town Counsel, for the defendant.

KASS, J.  On the grounds of "inadequate access, the inad-
equacy of Sam Turner [Road], and other reasons,"[1] the
planning board of Falmouth (the board) rejected an appli-
cation for subdivision approval (G. L. c. 41, § 81U, as

---

[1] The planning board's decision does not say what its other reasons are,
or might be, nor has it argued any other reasons.

amended through St. 1972, c. 749, §§ 1 and 2)[2] by the plaintiff developer, North Landers Corporation (North Landers). Acting on an appeal by North Landers under G. L. c. 41, § 81BB, the trial court entered judgment that the board's decision did not exceed its authority, thus allowing its action to stand. We are of the opinion that the regulations adopted by the board and applied in this case are impermissibly vague and that the judgment must be reversed.

North Landers' proposed subdivision is exceptionally large: it covers 447.36 acres and contemplates 447 building lots, an eighty-acre golf course, and sixty-four acres of open space. The only public way to which the development has access is Sam Turner Road, on which the North Landers parcel has 800 feet of frontage. To that street the North Landers plan provided a sixty-foot access divided into two paved lanes, each twenty-four feet wide and separated by a twelve-foot median strip. The plan also provides for two roads which run at right angles to the southerly access lane and lead to existing streets. Those streets, in turn, lead to Sam Turner Road at a point about 100 feet south of its intersection with the access way from the North Landers development. Sam Turner Road itself is laid out as a forty-foot way, but its paved surface is only eighteen feet wide. Although the proposed subdivision abuts Route 28 along most of its western boundary, that highway is a limited access road at this location, and the plan, therefore, shows no access to it. From the record before us it appears that the board is concerned that Sam Turner Road is too thin a line of communication to the rest of Falmouth, although the board's decision is silent as to how and why either the access way or Sam Turner Road is inadequate.

Section 17 A and B of the subdivision regulations of the town of Falmouth, which we set forth in full in the margin, gives no definition to the § 17 A concept of adequacy of access to a public way or the § 17 B concept of inadequacy of

---

[2] The amendments effected by St. 1978, c. 422, §§ 1 & 2, following the action of the board appealed from, are not pertinent to this case.

the public way to carry the traffic expected to be generated by the subdivision.[3] A criterion so rubbery and indefinite as "adequate" does not meet the standard of definiteness implicit in the text of G. L. c. 41, § 81Q, and enunciated expressly in the case law. *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329, 334 (1962). *Sparks* v. *Planning Bd. of Westborough,* 2 Mass. App. Ct. 745, 747-748 (1974). *Chira* v. *Planning Bd. of Tisbury,* 3 Mass. App. Ct. 433, 438 (1975). *Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct. 306, 309 (1976). *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. 171, 176-179 (1977). One man's adequacy is another man's gorge, and still another's want.[4] Certainly the words "adequate access"

---

[3] "Section 17. Adequate Access From Public Way [amended August 22, 1972]. A. Where the street system within a subdivision does not connect with or have, in the opinion of the Board, adequate access from a Town, County or State (public) way, the Board may require, as a condition of approval of a plan, that such adequate access be provided by the subdivider, and/or that the subdivider make physical improvements to and within such a way of access, in accord with the provisions of Section 21 of these regulations, from the boundary of the subdivision to a Town, County or State way. B. Where the physical condition or width of a public way from which a subdivision has its access is considered by the Board to be inadequate to carry the traffic expected to be generated by such subdivision, the Board may require the subdivider to dedicate a strip of land for the purpose of widening the abutting public way to a width at least commensurate with that required within the subdivision, and to make physical improvements to and within such public way to the same standards required within the subdivision. Any such dedication of land for purpose of way and any such work performed within such public way shall be made only with permission of the governmental agency having jurisdiction over such way, and all costs of any such widening or construction shall be borne by the subdivider."

[4] On the relative nature of what is "adequate" there comes to mind the verse of the elder Holmes:

"Little I ask; my wants are few;
I only wish a hut of stone,
A *very* plain brown stone will do,
 .    .    .    .
I care not much for gold or land;
 .    .    .    .

and "inadequate to carry the traffic to be generated by such subdivision" do not enable owners to "know in advance what is or may be required of them and what standards and procedures will be applied to them." *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. at 334. The requirement for reasonably definite rules and regulations was introduced into the statutory scheme with the legislative intent that "a prospective subdivider will know in advance in every case what will be required of him in the way of street construction and public utilities." 1953 House Doc. No. 2249, Report of the Special Commission on Planning and Zoning 55-56. A regulation so open ended and devoid of standards as the one before us lends itself too readily to subjective application or disapproval of plans "merely because the board feels general public considerations make such action desirable." *Pieper* v. *Planning Bd. of Southborough,* 340 Mass. 157, 163-164 (1959).

Obviously planning board regulations need not cover every contingency, but at the least in the instant case they could establish the minimum width of an access way and the number of points of contact with the existing street system of Falmouth, depending on the size of the development.[5] In a similar vein, regulations might set forth what characteristics of adjacent public ways[6] should be taken into

---

I only ask that Fortune send
A *little* more than I shall spend."

O.W. Holmes, "Contentment," The Poetical Works of Oliver Wendell Holmes 157 (1975).

[5] A member of the board testified in Superior Court, for example, that in her judgment the access system was sufficient for a development of up to one hundred units.

[6] See G. L. c. 41, § 81M, as amended through St. 1969, c. 884, § 2: "The powers of a planning board . . . shall be exercised with due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways . . . ." While the statement of legislative purpose contained in § 81M uses the phrase "adequate access," the last sentence of that section, read with § 81G, requires planning boards to fill the interstices of their general objectives with reasonable

account in planning the access system of a subdivision, always having in mind that standards may not be established which would reject a plan on the ground that the subdivision proposed would adversely affect traffic patterns or municipal services in the community as a whole. *Daley Constr. Co.* v. *Planning Bd. of Randolph,* 340 Mass. 149, 155-156 (1959). *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough,* 4 Mass. App. Ct. 79, 84 (1976). This is especially so in a case such as this, where the improvement of the paved way along Sam Turner Road is within the town's control, and where the owner has volunteered to defray a portion of the cost of making that improvement.

There is no merit in the argument of the board that § 16 of its regulations lends definition to what is adequate under § 17. The former section spells out specifications for the alignment, width, and grade of streets interior to the subdivision and offers no guidance concerning access requirements. Nor does it appear from the board's decision that there is any failure by North Landers to comply with those specifications.

The judgment is reversed. A judgment is to enter (a) stating that the board exceeded its authority in disapproving the plaintiffs' plan on the grounds stated in its decision, (b) annulling the action of the board, and (c) directing the board to hold a public hearing on the plan within sixty days of the date of judgment and to take final action on the plan within seventy-five days from the date of the judgment in a manner consistent with the applicable statutes, rules, regulations, and with this opinion. In the exercise of its discretion the Superior Court may provide in the judgment that it shall retain jurisdiction over the case pending final action by the board.

*So ordered.*

rules and regulations. See *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. at 176-179.