NORTH LANDERS CORPORATION vs. PLANNING BOARD
OF FALMOUTH.

Barnstable.   October 6, 1980. — February 3, 1981.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Subdivision Control,* Access ways, Regulations, Decision of planning
board.

The adequacy of a public way to provide access to a proposed subdivision
    was properly considered by a town's planning board in determining
    whether to approve a subdivision plan and by a judge on review of the
    board's decision under G. L. c. 41, § 81BB. [436-438]
The use of the phrase "adequate access" in §§ 81L, 81M, and 81P of G. L.
    c. 41, the Subdivision Control Law, is not impermissibly vague.
    [440-442]
A subdivision regulation promulgated by a town's planning board pur-
    suant to G. L. c. 41, § 81Q, which required "adequate access" within
    the subdivision and from a public way was not impermissibly vague
    and was consistent with the intent of c. 41, § 81M. [442-445]
A written decision of a town's planning board disapproving a definitive
    subdivision plan because of "inadequate access, the inadequacy of [an
    adjacent public way] and other reasons" fell seriously short of the
    specificity requirements of G. L. c. 41, § 81U. [445-446]

CIVIL ACTION commenced in the Superior Court on
May 4, 1977.

The case was heard by *Collari,* J., a District Court judge
sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Stephen T. Keefe, Jr.,* for the plaintiff.

*H. Theodore Cohen (Edward W. Farrell* with him) for
the defendant.

LIACOS, J.  North Landers Corporation (North Landers)
appealed the judgment of a Superior Court judge who up-

held the disapproval by the planning board of Falmouth (board) of its definitive plan for a subdivision of land in the town of Falmouth.  The Appeals Court reversed the judgment of the Superior Court judge, annulled the action of the board, and directed that a further public hearing be held by the board for the purpose of taking "final action" on the plan submitted.  *North Landers Corp.* v. *Planning Bd. of Falmouth*, 9 Mass. App. Ct. 193 (1980).  We granted the board's application for further appellate review.  As will appear, for reasons other than those stated by the Appeals Court, we vacate the judgment of the Superior Court.  We further order that the matter be remanded to the board by the Superior Court judge with directions that the board make a detailed statement of its reasons for disapproval of the plan, as required by G. L. c. 41, § 81U.

On January 26, 1977, North Landers filed a preliminary plan for subdivision of 447.36 acres of land in the Hatchville area of Falmouth.  The board rejected the preliminary plan on March 25, 1977, citing reasons of "[i]nadequate access, lack of plans and proof of adequate water supply and pressure, hazards of proximity to the divided highway, an overlong dead end road within the subdivision and the poor condition of the town way onto which the subdivision traffic would put an undue burden, in addition to the possible sanitary problems which have been cited by the Health Director."  On February 24, 1977, prior to the board's disapproval of the preliminary plan, North Landers filed a definitive plan.[1]  After a public hearing on April 19, 1977, the board voted to disapprove the definitive plan, this time citing its reasons for disapproval as "[i]nadequate access, the inadequacy of Sam Turner Road and other reasons."  North Landers took an appeal from this decision to the

---

[1] The Subdivision Control Law, G. L. c. 41, § 81S, as amended through St. 1964, c. 105, § 1, permits submission of a "preliminary plan" to the local planning board and the board of health before formulating and presenting the definitive plan.  The definition of a preliminary plan is found in G. L. c. 41, § 81L.

Superior Court. G. L. c. 41, § 81BB. We summarize the facts found by the trial judge.

The proposed subdivision encompasses approximately 447 woodland acres located in a hilly ridge area of Falmouth. Essentially an oblong, 3,400 feet wide by 6,000 feet long, the subdivision is bounded to the north and south by dense woods. (A sketch showing the relevant features of the final subdivision plan may be found as an appendix to this opinion.) A divided major highway, Route 28, forms the westerly border of the land area. On the east, a neck of land extends to Sam Turner Road, a public way. The portion of the locus which abuts Sam Turner Road is 800 feet long. There is no access from the subdivision to Route 28, which is a limited access highway. North Landers' plan includes a single access road through the eastern neck of the subdivision to the public way, Sam Turner Road. This access road, called Hill and Plain Road, is a divided road laid out to be sixty feet wide with a twelve-foot median strip.[2]

The subdivision plan calls for partition of the 447 acres into 447 buildable lots, with 144 acres to be used for open space, including an eighty-acre public golf course. Major and minor roads within the subdivision, including the access through Hill and Plain Road, would cover 43,127 feet. The judge estimated that 1,100 to 1,400 people will reside in the finished development; residents' automobiles will number at least 500. The record is silent as to how many additional automobiles the public golf course might draw into the subdivision. Using Hill and Plain Road, the single access road located at the eastern extreme of the proposed subdivision, homeowners on the western end of the development would need to travel two miles of subdivision roads before entering the public way.

---

[2] The judge found that emergency access might be had through a separate parcel of land owned by North Landers and abutting a neighboring subdivision. The lot of land in question, however, could not be used for constructing a road. There was evidence that North Landers had considered three possible routes for emergency access. These areas might be graded sufficiently for use by four-wheel drive emergency vehicles, but not made into regular access roads.

The subdivision roads ultimately would funnel traffic through the Hill and Plain Road access to the public way, Sam Turner Road.  Sam Turner Road, although laid out to a width of forty feet, is presently paved only eighteen feet across.  Because the road winds and dips, it would have to be straightened and widened in order to accommodate the traffic from the proposed subdivision.

The judge concluded that access to the subdivision through a single access road was inadequate to protect lives and property as delineated under G. L. c. 41, § 81M.[3]  He further determined that Sam Turner Road is inadequate to carry the expected traffic generated by the development.

North Landers argues that the judge erred in basing his conclusions on § 17 of the Falmouth subdivision regula-

---

[3] General Laws c. 41, § 81M, as amended through St. 1969, c. 884, § 2, provides a statement of the legislative purpose of the Subdivision Control Law:  "The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns in which it is, or may hereafter be, put in effect by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions and in proper cases parks and open areas.  The powers of a planning board and of a board of appeal under the subdivision control law shall be exercised with due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways; for reducing danger to life and limb in the operation of motor vehicles; for securing safety in the case of fire, flood, panic and other emergencies; for insuring compliance with the applicable zoning ordinances or by-laws; for securing adequate provision for water, sewerage, drainage, underground utility services, fire, police, and other similar municipal equipment, and street lighting and other requirements where necessary in a subdivision; and for coordinating the ways in a subdivision with each other and with the public ways in the city or town in which it is located and with the ways in neighboring subdivisions.  It is the intent of the subdivision control law that any subdivision plan filed with the planning board shall receive the approval of such board if said plan conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board pertaining to subdivisions of land; provided, however, that such board may, when appropriate, waive, as provided for in section eighty-one R, such portions of the rules and regulations as is deemed advisable."

tions, set forth in the margin.[4]  North Landers disputes the judge's conclusion that this section gives due notification to an owner or subdivider that adequate access must be provided or that it will form a basis for the imposition of conditions or disapproval of the submitted plans.  It contends instead that the language of § 17 fails the standard of definiteness required by the Subdivision Control Law and developed by earlier decisions of this court.  The Appeals Court agreed with these contentions and reversed the judgment on this basis.  We do not agree.  North Landers also asserts that neither the board nor the judge may consider the condition of a public way outside the subdivision.  Lastly, North Landers contends that the board's written decision failed the specificity requirements of G. L. c. 41, § 81U. The Appeals Court did not base its decision on either of these contentions.  We agree with the final contention.

I.  *The Adequacy of Sam Turner Road.*

North Landers attacks the board's and the judge's finding that Sam Turner Road is inadequate, on the ground that the Subdivision Control Law does not permit evaluation of ways outside a proposed subdivision.  We do not find such a limitation in the statute.  The language of § 81M exhorts a

---

[4] "Adequate Access From Public Way.  A.  Where the street system within a subdivision does not connect with or have, in the opinion of the Board, adequate access from a Town, County or State (public) way, the Board may require, as a condition of approval of a plan, that such adequate access be provided by the subdivider, and/or that the subdivider make physical improvements to and within such a way of access, in accord with the provisions of Section 21 of these regulations, from the boundary of the subdivision to a Town, County or State way.  B.  Where the physical condition or width of a public way from which a subdivision has its access is considered by the Board to be inadequate to carry the traffic expected to be generated by such subdivision, the Board may require the subdivider to dedicate a strip of land for the purpose of widening the abutting public way to a width at least commensurate with that required within the subdivision, and to make physical improvements to and within such public way to the same standards required within the subdivision. Any such dedication of land for the purpose of way and any such work performed within such public way shall be made only with permission of the governmental agency having jurisdiction over such way, and all costs of any such widening or construction shall be borne by the subdivider.

"due regard" for "lessening congestion . . . in the adjacent public ways" and "for coordinating the ways in a subdivision with . . . the public ways in the city or town in which it is located and with the ways in neighboring subdivisions."[5] The issue of whether a planning board has "the power to disapprove a subdivision plan due to traffic problems and access problems caused not by any inadequacy of the ways set out on the subdivision plan, but rather by inadequacies in the public ways adjacent to or providing access to the proposed development" has been explicitly left open. *Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct. 306, 309 (1976) (*Canter I*). Although the statute might be argued to be ambiguous in part, see *Daley Constr. Co.* v. *Planning Bd. of Randolph,* 340 Mass. 149, 153 (1959), we view the quoted language of the statute to be clear. See *Chouinard, petitioner,* 358 Mass. 780, 782 (1971); *Davey Bros.* v. *Stop & Shop, Inc.,* 351 Mass. 59, 63 (1966). Section 81M imposes no such circumscription as North Landers urges. The adequacy of Sam Turner Road was properly considered by the judge.[6]

Consideration by the judge of factors pertaining to safety, accessibility, or the increased traffic on Sam Turner Road comports with decisional law in this and other jurisdictions. Factors outside the subdivision may be considered where relevant to the rquirements of the statute or of local regulations. See, e.g., *Rounds* v. *Water & Sewer Comm'rs of Wilmington,* 347 Mass. 40 (1964) (planning board may

---

[5] See text of statute at note 3, *supra.*

[6] The judge did not rule that the inadequacy of Sam Turner Road would be, by itself, a valid basis of disapproval. His ruling states: "Although the inadequacy of the public way may not be sufficient standing by itself to warrant disapproval of the proposed subdivision plan it may be taken into consideration in conjunction with the inadequacy of the access from the public way to the subdivision, especially where, as in this case, it magnifies the inadequacy of the access from the subdivision to the public way because of the potential hazard to be created by the inability of the public way to deal reasonably with the traffic generated by the subdivision." Hence, we do not decide whether inadequacy of the public way alone would justify disapproval.

condition approval by requiring reasonable construction outside the subdivision to bring water service to it); *Hamilton* v. *Planning Bd. of Lexington*, 4 Mass. App. Ct. 802, 803 (1976) (where regulations purported to require adequate provision for drainage, board properly rejected plan after consideration of entire watershed area). Contrast G. L. c. 41, § 81Q (local regulation may not require dedication of land *within* subdivision to public use without just compensation) (emphasis added).

Other jurisdictions having subdivision control statutes similar in intent to G. L. c. 41, § 81M, are in agreement that the condition of adjacent public ways must be considered in the board's deliberations. See, e.g., *Buena Park* v. *Boyar*, 186 Cal. App. 2d 61 (1960); *Nicoli* v. *Planning & Zoning Comm'n of Easton*, 171 Conn. 89, 96 (1976); *Arrowhead Dev. Co.* v. *Livingston County Rd. Comm'n*, 92 Mich. App. 31 (1979); *Pearson Kent Corp.* v. *Bear*, 28 N.Y.2d 396, 399 (1971).

II. *The Sufficiency of § 17 of the Board's Regulations.*

The essence of North Landers' claim is that the board's regulation 17, requiring "adequate access," is so vague that it fails to give the developer notice of what might be required in order to obtain ultimate approval of its plan.[7] The statute requires that planning boards promulgate reasonable rules and regulations by which prospective developers may know what will be expected in a satisfactory subdivision plan. G. L. c. 41, § 81Q.[8] This court has interpret-

---

[7] See text of regulations at note 4, *supra.*

[8] General Laws c. 41, § 81Q, as amended through St. 1969, c. 884, § 3, provides in relevant part: "After a public hearing . . . a planning board shall adopt, and, in the same manner, may, from time to time, amend, reasonable rules and regulations relative to subdivision control not inconsistent with the subdivision control law or with any other provisions of a statute or of any valid ordinance or by-law of the city or town. Such rules and regulations . . . shall set forth the requirements of the board with respect to the location, construction, width and grades of the proposed ways shown on a plan and the installation of municipal services therein, which requirements shall be established in such manner as to carry out the purposes of the subdivision control law as set forth in section

ed § 81Q to require that subdivision regulations must be "comprehensive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them." *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329, 334 (1962). Cf. *Pieper* v. *Planning Bd. of Southborough,* 340 Mass. 157 (1959). The rule of *Castle Estates* has been the touchstone of judicial scrutiny of local regulations for any taint of impermissible vagueness. See *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. 171, 179 (1977) (rejection of subdivision plan on basis of language of Subdivision Control Law improper without precise local rule to same effect); *Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct. 306, 307-308 (1976) (*Canter I*) (absent regulation regarding traffic on adjacent ways, board may not disapprove plan on grounds of increased traffic congestion); *Chira* v. *Planning Bd. of Tisbury,* 3 Mass. App. Ct. 433, 438 (1975) (requirements of "attractiveness" and "livability" lack clear and objective standards). The Appeals Court was of the view that the *Castle Estates* prescription for definiteness is not satisfied by the language of regulation 17 of the board's regulations. *North Landers Corp.* v. *Planning Bd. of Falmouth,* 9 Mass. App. Ct. 193, 194-195 (1980). Our reading of the regulation in light of the attendant circumstances and related case law, however, leads us to conclude that the *Castle Estates* standard has not been violated.

---

eighty-one M. . . . In establishing such requirements regarding ways, due regard shall be paid to the prospective character of different subdivisions, whether open residence, dense residence, business or industrial, and the prospective amount of travel upon the various ways therein, and to adjustment of the requirements accordingly. . . . The rules and regulations may, however, provide that not more than one building designed or available for use for dwelling purposes shall be erected or placed or converted to use as such on any lot in a subdivision, or elsewhere in the city or town, without the consent of the planning board, and that such consent may be conditional upon the providing of adequate ways furnishing access to each site for such building, in the same manner as otherwise required for lots within a subdivision."

a. *The Denotation of "Adequate Access."*

The language of the challenged regulation requiring "adequate access" falls within that category of indefinite terms which Ernst Freund has called terms of judgment and degree. Freund, The Use of Indefinite Terms in Statutes, 30 Yale L.J. 437, 438 (1921). To analyze such open-ended statutory language under vagueness criteria, one must take into account not only the words themselves, but the entire context of the regulation attempted.

The board's regulation draws on the language of G. L. c. 41, § 81M, which includes provision for "adequate access" as an integral and principal object of the Subdivision Control Law. *Stoneham* v. *Savelo,* 341 Mass. 456, 459 (1960). See R. Anderson, American Law of Zoning § 1.15, at 23-24 (2d ed. 1976) (coordinating streets within subdivisions with existing streets to provide "adequate open spaces for traffic" is standard which pervades enabling statutes); 4 A. Rathkopf, Zoning and Planning § 2, at 71-11 (4th ed. 1980) (planning board obliged to require adequate road facilities); E.C. Yokley, The Law of Subdivisions § 3, at 4 (1963 & Supp. 1980) (purpose of requiring subdivision plots is to assure adequate provision for streets); Johnson, Notes on Planning and Zoning, 43 Mass. L.Q. (No. 3) 20, 23 (1958) (rationale of subdivision control is to prevent creation of substandard streets).

Albeit broad in connotation, the term "adequate access," or such cognates as "suitable" and "satisfactory,"[9] runs like a leitmotif through the law of subdivision control; and courts have had little difficulty applying its basic meaning under different factual circumstances. In the seminal case of *Mansfield & Swett, Inc.* v. *West Orange,* 120 N.J.L. 145 (1938), the New Jersey Supreme Court underscored the common understanding which attaches to the concept of access: "The free flow of traffic with a minimum of hazard of

---

[9] Black's Law Dictionary 61 (5th ed. 1976) defines "adequate" as being sufficient; commensurate; equal to what is required; suitable to the case or occasion.

necessity depends upon the number, location and width of streets . . . ." *Id.* at 150. The essential significance of the phrase, which is well within the comprehension of planning boards and landowners, is that "streets be of sufficient width and suitable to accommodate motor vehicle traffic and to provide access for fire-fighting equipment and other emergency vehicles." *Noble* v. *Township Comm. of Mendham,* 91 N.J. Super. 111, 118 (1966).

In Massachusetts, the existence of adequate access is the threshold determination that triggers operation of the Subdivision Control Law under G. L. c. 41, §§ 81L and 81P.[10] The reasoning of cases decided under these sections of the statute sheds further light on the common understanding of the notion of adequate access. In *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476 (1955), this court applied the phrase

---

[10] General Laws c. 41, § 81L, as amended through St. 1965, c. 61, defines "Subdivision:" "'Subdivision' shall mean the division of a tract of land into two or more lots and shall include resubdivision, and, when appropriate to the context, shall relate to the process of subdivision or the land or territory subdivided; provided, however, that the division of a tract of land into two or more lots shall not be deemed to constitute a subdivision within the meaning of the subdivision control law if, at the time when it is made, every lot within the tract so divided has frontage on (*a*) a public way or a way which the clerk of the city or town certifies is maintained and used as a public way, or (*b*) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (*c*) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon."

General Laws c. 41, § 81P, as appearing in St. 1963, c. 363, § 1, provides in relevant part: "Any person wishing to cause to be recorded a plan of land situated in a city or town in which the subdivision control law is in effect, who believes that his plan does not require approval under the subdivision control law, may submit his plan to the planning board of such city or town in the manner prescribed in section eighty-one T, and, if the board finds that the plan does not require such approval, it shall forthwith, without a public hearing, endorse thereon or cause to be endorsed thereon by a person authorized by it the words 'approval under the subdivision control law not required' . . . ."

"adequate access," used in G. L. c. 41, § 81M, to require a way adequate for vehicular traffic to the subdivision lots. *Id.* at 480-481. In *Gifford* v. *Planning Bd. of Nantucket*, 376 Mass. 801 (1978), where adequate access to an existing way was the basis claimed to excuse approval as a subdivision as authorized by §§ 81L, 81P, this court stated that "a principal object of the [Subdivision Control] [L]aw is to ensure efficient vehicular access to each lot in a subdivision, for safety, convenience, and welfare depend critically on that factor." *Id.* at 807. Again, in *Casagrande* v. *Town Clerk of Harvard*, 377 Mass. 703 (1979), we invoked the "adequate access" standards of § 81M to decide that frontage on a narrow, partly paved road too narrow for two vehicles to pass was insufficient to bypass planning board approval as a subdivision. See also *Richard* v. *Planning Bd. of Acushnet*, 10 Mass. App. Ct. 216, 219 (1980) (stated legislative purpose of Subdivision Control Law is safe, convenient access). Cf. *Spalke* v. *Board of Appeals of Plymouth*, 7 Mass. App. Ct. 683, 690 (1979). We conclude from these cases that the phrase "adequate access" under G. L. c. 41, §§ 81L, 81M, and 81P, is not so rubbery or indefinite a term as to elude common understanding. We consider next whether adoption into the local regulation of the general enabling language of c. 41 falls short of the *Castle Estates* definiteness standard.

b. *The Language of Regulation 17.*

North Landers urges that we compare the board's regulation 17 with regulations which have been upheld under *Castle Estates*.[11] Even accepting North Landers' claim that more lucid regulatory language can be used, we do not think that imperfect wording is necessarily fatal to the regulation's validity. Within the *Castle Estates* rubric of definiteness there is room for flexibility to allow local boards

---

[11] The parties offered no evidence of the language of regulations in other municipalities. We decline to pursue the comparison on our own motion under the proscription of *Finlay* v. *Eastern Racing Assoc.*, 308 Mass. 20, 27 (1941) (pertinent rules of commission should be formally placed before trial court).

to tailor decisions to the specific facts and circumstances. Note, Land Subdivision Control, 65 Harv. L. Rev. 1226, 1227 (1952) (unlike zoning which presupposes crystallized determination of land use, subdivision control contemplates general standards to be specifically applied by the local administrative body). The Subdivision Control Law has blended a requirement for specificity with permission for flexibility. General Laws c. 41, § 81U, contemplates not only detailed statements of reasons for disapproval but also the option to revoke disapproval on further negotiation with developers.[12] Also, § 81R permits boards to waive local rules under appropriate circumstances in the public interest. These provisions, as well as the language of G. L. c. 41, § 81M, calling for a "due regard" to certain aspects of the public interest and that of G. L. c. 41, § 81Q, which calls for adopting and amending "reasonable" rules and regulations, bespeak the Legislature's cognizance that planning decisions are rarely made by hard and fast rules. Tilden, Improved Administration of Subdivision Control, 46 Mass. L.Q. 201, 203-204 (1961) (planning conforms to "no single ideal formula which all towns and cities can adopt"). Planning board regulations may permit sufficient leeway for determination based on the individual facts of each case. *Sansoucy* v. *Planning Bd. of Worcester*, 355 Mass. 647, 648-649 (1969) (local regulation calling for underground utilities unless "not feasible" in judgment of board held valid). *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 213-214 (1967) (board has discretion to apply or not to apply its regulations requiring extension of subdivision streets in the public interest). *Canter* v. *Planning Bd. of Westborough*, 7 Mass. App. Ct. 805, 811 (1979) (*Canter II*) (use of word "normally" in local board's regulation covering pedestrian ways properly reserves to board case-by-case determination of what might be appropriate

---

[12] General Laws c. 41, § 81U, as amended through St. 1978, c. 422, provides that a board may "revoke its disapproval" if a developer amends and resubmits a conforming plan. See text of section at note 13, *infra.*

for a particular subdivision). *McDavitt* v. *Planning Bd. of Winchester*, 2 Mass. App. Ct. 806, 807 (1974) (regulation that streets be continuous and in alignment with existing streets "as far as practicable" upheld under *Castle Estates* scrutiny).

The decision of the Appeals Court in *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. 79, 82-83 (1976), also bears relevance to the instant case. In *Mac-Rich* the developer alleged failure of the regulations to notify him that a greater road width than the forty-foot minimum might be required. The court found sufficient notice in the language, "[g]reater width shall be required by the Board when deemed necessary for present and future vehicular travel." *Id.* at 83. The court concluded that the *Castle Estates* standard was satisfied because the regulation gave "ample notice of 'what is or *may be required*'" (emphasis in original). *Id.* The *Mac-Rich* court approved the regulation as consistent with a proper exercise of the board's discretion to make a case-by-case determination. *Id.* at 85-86.

We are unable to find a case in which regulations regarding adequate access have been invalidated on their face. Rather, the *Castle Estates* standard is offended when local boards have introduced reasons not specified in the published regulations. See, e.g., *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 163-164 (1959) (where plan conformed to regulations board could not delay approval until receipt of engineering survey); *Daley Constr. Co.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 152 (1959) (where board admitted plan was proper, it could not reject it on its own consideration of area water shortage); *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 178 (1977) (no rule of board required developer to demonstrate adequate water supply for firefighting). *Canter I*, *supra*, is of the same import. In *Chira* v. *Planning Bd. of Tisbury*, 3 Mass. App. Ct. 433 (1975), the challenged regulation permitted open-ended discretion on a matter outside the specified ambit of § 81M, viz. "attractiveness." *Id.* at

438. We thus distinguish *Chira,* as well as *Fairbairn* and *Canter I, supra,* in which the boards relied on language from G. L. c. 41, § 81M, "danger to life and limb," which did not appear in any local regulation.

We conclude that the regulation calling for adequate access within the subdivision and in the adjacent public way is valid and consistent with the intent of G. L. c. 41, § 81M.

III. *The Procedural Deficiencies.*

Although we have concluded that the board's regulation 17 was sufficient to give North Landers notice under G. L. c. 41, § 81Q, we find that the board's statement of reasons for its decision falls seriously short of the statement "in detail" required by G. L. c. 41, § 81U.[13] The provision in G. L. c. 41, § 81U, for revocation of disapproval and the two-step plan presentation process outlined in G. L. c. 41, §§ 81S, 81T, and 81U (amended through St. 1978, c. 422, §§ 1 and 2), manifest a legislative intent to maximize the dialogue between board and developer and thus to ensure the developer's right to approval of plans which are brought into compliance with the statutory and regulatory requirements applicable to the locus. Without the accountability built into G. L. c. 41, § 81U, the board's legitimate discretion might degenerate into the caprice feared by early critics of the statute. See generally McCarty, Planning Boards and Subdivision Control Again, 40 Mass. L.Q. (No. 4) 23, 29 (1955); 1953 House Doc. No. 2249, at 10-12; Tilden, Improved Administration of Subdivision Control, 46 Mass. L.Q. 201, 203 (1961). Indeed, the exhortative give-

---

[13] General Laws c. 41, § 81U, as amended through St. 1972, c. 749, §§ 1 and 2, provides in relevant part: "After the hearing required by section eighty-one T . . . the planning board shall approve, or, if such plan does not comply with the subdivision control law or the rules and regulations of the planning board or the recommendations of the health board or officer, shall modify and approve or shall disapprove such plan. In the event of disapproval, the planning *board shall state in detail* wherein the plan does not conform to the rules and regulations of the planning board or to the recommendations of the health board or officer and shall revoke its disapproval and approve a plan which, as amended, conforms to such rules and regulations or recommendations" (emphasis supplied).

and-take implied in G. L. c. 41 distinguishes the operation of subdivision control laws from the more rigid negative zoning procedures. See Johnson, Notes on Planning and Zoning, 43 Mass. L.Q. (No. 3) 20, 24 (1958) (zoning forbids certain land uses, but subdivision control compels construction of adequate ways). The record before us indicates that both parties failed to comply with statutory procedures. North Landers proceeded to file a definitive plan before it received the statement of disapproval for its tentative plan. The board failed to detail wherein the access within the subdivision or the condition of Sam Turner Road was inadequate.[14] Under § 81U, the developer is entitled to resubmit the definitive plan, and, if it then conforms to the regulations of the board, the board is required to "revoke its disapproval." Failure of the board to make clear its reasons for disapproval thus deprives the developer of this statutory right. What may suffice by way of regulation is different from what constitutes a fair decision. *Commonwealth Properties, Inc.* v. *Washington County,* 35 Or. App. 387 (1978). *Marbet* v. *Portland Gen. Elec.,* 277 Or. 447 (1977). Standards which may be stated initially only in general terms are made concrete in the course of a proceeding focusing on the particular site. 277 Or. at 460.

We hereby vacate the judgment of the Superior Court judge and remand to that court which is to direct the planning board of Falmouth to provide a detailed statement of the reasons for its disapproval of North Landers' definitive plan. The Superior Court may provide in the judgment that it shall retain jurisdiction to review the adequacy of further findings of the board.

*So ordered.*

---

[14] The judge correctly declined to consider the board's nebulous allusion to "other reasons." We believe that the judge might better have remanded at the outset for full explication of the board's disapproval.