Fremont-Smith, J.
Robert Masys and Thomas Bramhall (hereinafter, “Applicants”) are the owners of a 9.1-acre tract of land situated in Haverhill, Massachusetts. In 1990, the Applicants filed with the Haver-hill Planning Board a subdivision application and Definitive Subdivision Plan consisting of nine lots and one existing home and lot.
On April 20, 1991, a revised Definitive Subdivision Plan was submitted to address the concerns of the Planning Board. When the revised plan was denied, the Applicants appealed the decision of the Planning Board pursuant to M.G.L.c. 41, §8 IBB and §81Q, but, on the eve of trial, they entered into a settlement agreement with the City.
Pursuant to that agreement, a third Definitive Subdivision Plan (hereinafter, “the Plan”) was then filed with the Planning Board. This Plan depicts the only access road to the subdivision, a private way called Crystal Court, having a right-of-way 33 feet wide, and depicts its paved width (currently 14 feet) as being widened by the applicants to twenty-two feet. The Assistant City Solicitor, Michael Hart, issued an opinion that the Plan was in compliance with the regulations governing subdivision of land in Haverhill, Massachusetts. Following a public hearing, the Planning Board unanimously approved the subdivision based upon the Plan.
It is from this approval that the plaintiff, an abutter to Crystal Court, brings this appeal pursuant to M.G.L.c. 41, §8IBB.
Crystal Court was originally laid out by an engineer’s plan filed with the City of Haverhill in 1984. Five single-family homes, one of which is owned by the plaintiff, abut the northerly side of Crystal Court, whereas four single-family homes, one of which is owned by defendant Robert Masys, abut the southerly side of Crystal Court.
The plaintiffs complaint alleges two grounds for his contention that the City of Haverhill Planning Board exceeded its authority in approving the subdivision based upon the Plan. They are:
1) sheet three of the Plan which depicts the access way leading into the subdivision, Crystal Court, is not accurate in showing a 33-foot-wide right-of-way, and
2) there will be a taking of private property outside of the right-of-way as a result of the proposed widening of Crystal Court to 22 feet.
No other issues were raised by the plaintiff in his complaint or at the trial.[2]
The third sheet of the Plan was prepared using recorded deeds and plot plans of the property abutting Crystal Court, and by locating, in the field, monuments and bounds referred to therein. Based upon the 1894 City of Haverhill engineer’s plan which laid out Crystal Court, which showed a scaled right-of-way of 33 feet between two parallel lines, the Plan shows the right-of-way for Crystal Court to be 33 feet in width, and depicts the proposed width of the paved portion to be enlarged to 22 feet within the right-of-way.
The City of Haverhill Tax Assessor’s map indicates a scaled right-of-way in Crystal Court of between approximately 29 and 35 feet in width, and plaintiffs expert witness’s plan depicts the Crystal Court right-of-way as varying between 29 and 33 feet in width. It also shows, however, that any proposed roadway improvements would occur inside of the right-of-way even if its width is as little as 29 feet, as depicted on the plaintiffs expert’s plan and testified to by the plaintiff. Stated another way, plaintiffs own measurements indicate that the right-of-way was, at all points, at least 29 feet in length, so that none of the proposed roadway widening from 14 to 22 feet would result in the taking of any private property outside of the right-of-way, even if plaintiffs contentions as to its -width are assumed to be correct.
The Haverhill Planning Board’s Rules and Regulations contain no provision for the disapproval of a Definitive Subdivision Plan due to inadequacy of access and do not address at all the adequacy of roads or ways except for those located within the subdivision or located within seventy-five feet of the subdivision.
The Haverhill Planning Board nevertheless considered the adequacy of access into the proposed subdivision on several occasions, and, as a result of concerns expressed by and communications from its fire and police departments, requested the Applicants to improve Crystal Court by enlarging the paved area to 22 feet in width. The applicant, by way of the Plan, agreed.
While the Plan indicated that the right-of-way was 33 feet in width, there is no indication that the Planning Board (or any other city agency) considered the width of the right-of-way (as distinguished from the width of the paved area) to be material to the question of adequacy of access or to its approval of the subdivision.
II. CONCLUSIONS OF LAW
As the parties well know, a c. 41. §8 IBB appeal entails a hearing de novo in which the court independently determines the relevant facts which are then applied in ruling on the validity of the Board’s actions. G.L.c. 41, §81BB; Fairburn v. Planning Board of Barnstable, 5 Mass.App.Ct. 171 (1977); Batchelder v. Planning Board of Yarmouth, 31 Mass.App.Ct. 104 (1991). In these circumstances, no deference or special weight is afforded the Board’s determinations or findings. Cf. Needham Pastoral Counseling Center, Inc. v. Board of Appeals of Needham, 29 Mass.App.Ct. 31 (1990) (interpreting identical language in c. 40A, § 17 concerning the scope of judicial review of §17 appeals). On the other hand, if the facts found comport with the Board’s *223 findings, the Court may not substitute its judgment for that of the Board and the continuing burden of proof remains with the plaintiff to show that the Board exceeded its authority. Mac Rich Realty Const., Inc. v. Planning Board of Southboro, 7 Mass.App.Ct. 79, 83 (1976).
Although the question has not been squarely decided in Massachusetts,[3] common sense dictates that a Planning Board should be able to consider the adequacy or inadequacy of access to a subdivision in determining whether to approve a subdivision, and the plain meaning of c. 41, §81M requires a Planning Board to do so. G.L.c. 41, §81M provides that “the power of a planning board . . . shall be exercised with due regard to the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel.” Accordingly, I rule that c. 41, §81M authorizes and, indeed, requires a Planning Board, in approving a subdivision, to consider adequacy of access, regardless of whether the access road or way extends beyond 75 feet from the subdivision or whether the Planning Board’s Rules and Regulations set forth specific requirements relating thereto.[4]
The statutory term “adequate access,” as used in the statute, is not entirely undefined. It has been interpreted in various decisions to mean “streets [that are] of sufficient width and suitable to accommodate motor vehicle traffic and to provide access for firefighting equipment and other emergency vehicles,” North Landers Corp v. Planning Board of Falmouth, 382 Mass. 432, 441 (1981); “adequate for access for vehicular traffic,” Petty v. Planning Board of Rowley, 332 Mass. 476, 481 (1955); “efficient vehicular access to each lot,” Gifford v. Planning Board of Nantucket, 376 Mass. 801, 807 (1978); and “safe and convenient access [which is also] adequate for securing safety in case of fire, flood, panic, or other emergencies,” Cassagrande v. Town Clerk of Harvard, 377 Mass. 703, 708 (1979).
Accordingly, I rule that the Haverhill Planning Board did not exceed its authority in requiring that the only access road, Crystal Court, be widened to 22 feet as a condition of its approval, and was not obligated to approve the subdivision without regard to the adequacy of access.
An applicant is required to submit a “definitive plan” in order to obtain approval, and if such a plan were shown to have been erroneous in any material respect, the Planning Board could revoke or annul its previous approval which had been predicated thereon.
In this case, however, while the accuracy of the 33-foot-wide right-of-way shown on the Plan is unclear, I find that the width of the right-of-way (as-distinguished from the width of the pavement) was not a material factor in the Planning Board’s decision to approve the subdivision. Rather, the Board (and other city agencies) were only concerned that the paved portion of Crystal Court be enlarged to 22 feet to permit adequate access to and egress from the proposed development. As it is undisputed that a 22-foot-wide paved area will fit within the right-of-way (whether of the width shown on the Plan or the width asserted by plaintiffs), I find that the Plan was not erroneous in any material respect, and that the Planning Board did not exceed its authority by approving the subdivision based upon the Plan and upon its depiction of Crystal Court’s pavement being enlarged to 22 feet in width.
I conclude that it is immaterial whether the 33-foot-wide right-of-way, as depicted on the Plan, was inaccurate, in view of the absence of any showing that the proposed widening of Crystal Court to twenty-two feet would encroach on any land of the abutters.
Accordingly, I conclude that the Planning Board’s approval of the subdivision based upon the Plan did not exceed the Planning Board’s authority.[5]
JUDGMENT
Accordingly, judgment is hereby entered for the defendants.

 Counsel agreed at trial that this case does not raise any issue regarding the defendants’ right, absent permission of the abutters, to widen Crystal Court to the proposed 22 feet, and the court makes no ruling in that regard.

 See Federline v. Planning Board of Beverly, 33 Mass.App.Ct. 65, 69, n. 6 (1992); North Landers Corp. v. Planning Board of Falmouth, 382 Mass. 432, 437 (1981).

 The legal rule is somewhat different when a Planning Board disapproves a subdivision. A disapproval can be predicated only upon a violation of the Planning Board’s rules and regulations, or upon a recommendation of the Health board. G.L.c. 41, §81U; Cantor v. Planning Board of Westborough 4 Mass.App.Ct. 306 (1976).

 If for any reason, the contemplated widening of Crystal Court cannot be carried out, the Planning Board’s approval, which was premised thereon, will be null and void. This is not say, however, that the Planning Board’s disapproval of the subdivision, based on the inadequacy of the existing access road, would necessarily be upheld in the present circumstances. See footnote 4, supra.